The Port Edwards, Centralia & Northern R. Co. vs. Arpin.

that part of the order sustaining the demurrer to the sixth defense is reversed, and the cause is remanded for further proceedings.

*By the Court.*— Ordered accordingly.

---

THE PORT EDWARDS, CENTRALIA & NORTHERN RAILWAY COMPANY, Respondent, vs. ARPIN, Appellant.

*September 5 — September 29, 1891.*

*Railroad corporations: Increase of capital stock: Enforcing stock sub-scriptions: Assessments.*

1. A railroad corporation, organized under ch. 87, R. S., may increase its capital stock in the manner prescribed by sec. 1826, without prejudice to its right to enforce prior stock subscriptions.
2. Such a company, as soon as incorporated, may make assessments on unpaid stock subscriptions, without regard to the aggregate amount of capital stock subscribed or the sums paid thereon. *Anvil Mining Co. v. Sherman,* 74 Wis. 226, distinguished.

APPEAL from the Circuit Court for *Wood* County.

This appeal is from an order striking out a general de-murrer to the complaint as frivolous. The order grants defendant leave to answer on the usual terms. The sub-stance of the complaint to which the demurrer was inter-posed is correctly and sufficiently stated by counsel for plaintiff in their brief substantially as follows:

The complaint alleges the incorporation and organization of plaintiff company under ch. 87, R. S., at the times there-inafter mentioned, and that it was then, and for more than six months last past has been, engaged in the construction of its line of railroad; that the authorized capital stock of plaintiff at the time of its incorporation was $200,000, di-vided into 2,000 shares of $100 each, and that afterwards its articles of organization were duly amended, increasing

the capital stock thereof to $300,000, divided into 3,000 shares of $100 each; that defendant was one of the incorporators of plaintiff company, and one of the subscribers to the original articles of organization, wherein and whereby he subscribed for and agreed to take fifty shares of its capital stock at the par value of $100 for each share, and agreed to pay plaintiff therefor the sum of $5,000 in the manner and in such instalments as the board of directors of the plaintiff should require the same to be paid; that defendant was also one of the board of directors named in said articles of organization who should manage its affairs for the first year, and continued to act as such from the time of the organization of said company (about January 20, 1890) to January 13, 1891; that soon after its organization plaintiff began purchasing the right of way and depot grounds for its line of railroad, and in the month of June, 1890, began its grading and construction; that the entire line thereof is now graded, bridged, tied, and ironed to a sufficient extent to allow the running of light trains thereon, and that the complete ballasting and tying of said roadbed will be finished during the present spring; that, for the purpose of paying for such right of way, depot grounds, and other expenses, the board of directors, including the defendant, from time to time, and prior to September 4, 1890, made assessments and calls for payments on the stock subscriptions of the defendant and other subscribers, to the amount of sixty per cent. thereof, and that defendant had paid thereon, prior to September 4, 1890, the sum of $1,750, and no more, leaving the sum of $1,250 still due and unpaid on said assessment of sixty per cent.; that on September 4, 1890, at a regular meeting of the board at which defendant was present and acting as a director, a resolution was unanimously adopted by said board that all stockholders in arrears be required to pay the full sum of sixty per cent. upon the capital stock subscribed for, which had not there-

The Port Edwards, Centralia & Northern R. Co. vs. Arpin.

tofore been paid, on or before November 10, 1890, and also making an assessment of the remaining forty per cent. of said stock subscriptions, to be paid to plaintiff's treasurer on or before November 10, 1890; that at the time said resolutions were adopted the defendant was, and still is, the owner of said fifty shares of stock, and that there was due and owing to plaintiff thereon the sum of $3,250.

The complaint then alleges due service of notice of said assessments upon the defendant and other delinquent subscribers, and his failure to pay said assessments; that at a meeting of said board held November 20, 1890, at which all the directors, including defendant, were present, it was resolved by said board to bring actions against each of the stockholders then in default, among whom was defendant; that said resolution is still in full force and effect; that defendant has refused to pay said assessments, or any part thereof, except the sum of $196.25 paid by him thereon January 27, 1891; that plaintiff is, and always has been, ready and willing to issue and deliver to defendant certificates for said fifty shares of stock, and offers to do so as soon as the balance due thereon is paid; also that defendant has acted as a stockholder and voted said fifty shares of stock at all stockholders' meetings attended by him from the organization of the company to the present time. Judgment is demanded for the balance due, $3,053.75, with interest from November 10, 1890, and costs.

For the appellant there was a brief by *Geo. L. Williams* and *B. R. Goggins*, and oral argument by *Mr. Williams*.

For the respondent there was a brief by *Gardner & Gaynor*, and oral argument by *Geo. R. Gardner*.

Lyon, J. Although this appeal is from an order striking out a demurrer to the complaint as frivolous, yet, under the existing rule of this court, the question to be determined is whether the demurrer is well taken. It was so held in

*Diggle v. Boulden*, 48 Wis. 477, and the rule has since been constantly adhered to.

It is maintained by the learned counsel for defendant that the complaint fails to state a cause of action, and hence that the demurrer is well taken, for either of two reasons: (1) Because it appears from the complaint that the amount of plaintiff's capital stock was increased after defendant subscribed thereto, presumably without his consent; and (2) because it is not averred in the complaint that one half of the capital stock of the plaintiff company had been subscribed, and twenty per cent. thereof paid in, when the assessments on defendant's stock were made. It appears that 371 shares of the stock were subscribed by the persons who signed the certificate of organization, and no other subscriptions thereto are alleged.

In considering these objections to the sufficiency of the complaint, it should be observed, at the outset, that the averments of the complaint show sufficiently the incorporation of the plaintiff company under ch. 87, R. S., under which chapter the liability of the defendant must be determined. Corporations "for building or operating public railroads" are especially excepted from the operation of ch. 86, R. S. (S. & B. Ann. Stats. sec. 1771). The plaintiff is a corporation of this class. Hence the case of *Anvil Mining Co. v. Sherman*, 74 Wis. 226, which was decided under ch. 86 (sec. 1773, R. S.), has no application to this case.

Under ch. 87, as soon as the incorporation of the plaintiff was complete, it possessed all the powers and privileges conferred by law upon such corporations. One of these was to increase its capital stock. Sec. 1826. Another was to make assessments upon the capital stock, and to enforce payment thereof by forfeiture of the stock so assessed, or in the manner provided in sec. 1754 (sec. 1824). One of the methods provided in sec. 1754 is by suit in the name of the corporation against the delinquent stockholder, which is the remedy here resorted to.

The common-law rules that any material alteration of the charter of a corporation, without the consent of a stockholder, relieves him from liability on his stock subscription, and that assessments on stock to raise money for the general purposes of the corporation cannot lawfully be made until all the capital stock has been subscribed, are invoked to sustain the demurrer. These rules are applicable only to cases in which the alteration or assessment is not authorized by the charter as it existed when the subscription was made. This is not such a case. The provisions of ch. 87, R. S., for the incorporation of railroad companies, and conferring upon them the privileges and powers, and charging them and their stockholders with the obligations, therein specified, is the charter of the plaintiff. It has not been changed since the defendant made his subscription. It is the contract between the stockholders of the company; between the state and such stockholders; and between the state and the corporation. Cook, Stocks, § 492. In contemplation of law, this charter is contained in each stock subscription as effectually as though expressly written therein. Hence the subscription of defendant must be treated as though it contained express stipulations that the capital stock of the company might be increased in the manner pointed out in sec. 1826 without prejudice to the right of the company to enforce payment for such stock; and that, as soon as the company was incorporated, it might lawfully make assessments on unpaid stock subscriptions, and enforce payment thereof without regard to the aggregate amount of capital stock subscribed or the sums paid thereon. Such is the clear meaning of secs. 1820, 1824, R. S. In *Lynch v. E., L. F. & M. R. Co.* 57 Wis. 430, a special railroad charter was so construed, although not as free from ambiguity or doubt, as to the power of assessment before the whole capital stock is subscribed, as in ch. 87.

In the view we have taken of the case, it is unnecessary to consider the question of waiver, which was discussed by counsel. We conclude that the complaint states a cause of action, and hence that it was not error to strike out the demurrer.

*By the Court.*— Order affirmed.