## PERRY *v*. BANK OF COMMERCE.

[77 South. 812, Division A.]

1. BANKS AND BANKING. *Decreasing capital stock.*

Under Constitution 1890, section 88, the right is given to the legislature to create corporations and amend or change charters of corporations, and where the charter of the corporation itself provides that it may be amended by reading into it section 899, Code 1906 (Hemmingway's Code, section 4071), permitting amendments, and the corporation so provides by its by-laws, as authorized under section 901, Code 1906 (Hemmingway's Code, section 4073), and where the majority of the stockholders pass a resolution for the amendment, properly petition for the same under the law, and the amendment is granted as authorized by the statute. Such amendment is legal and valid.

2. BANKS AND BANKING. *Decreasing capital stock. Injustice to stockholder.*

An amendment to the charter of a bank reducing its capital stock from thirty-five thousand dollars to twenty-five thousand dollars does no injustice to a stockholder, where he is offered new stock under the amended charter which is of the same actual value, though a less number of shares, as the stock held by him in the bank before its capital stock was reduced by the amendment.

APPEAL from the chancery court of Grenada county. HON. J. G. McGAUEN, Chancellor.

Suit by J. C. Perry against the Bank of Commerce. From a decree overruling a demurrer to complainants' bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*Green & Green,* for appellant.

There is no authority under the Constitution and laws of Mississippi to compel a shareholder to accept a reduction in capital stock and to have his private property evidenced by shares, taken for the benefit of the corporation.

The question involved in the case is one of the most important, and involves the fundamental right of every shareholder in the state of Mississippi. Under the Constitution of the state, corporations shall be created by general laws, and all such laws shall be subject to alteration and repeal (Section 98), section 178 provides: "Corporations shall be formed under general laws only. The legislature shall have power to alter, amend, or repeal any charter of corporations now existing and revocable and any that may hereafter be created whenever in its opinion, it may be for the public interest to do so. Provided, however, that no injustice shall be done to the stockholders." See *State* v. *L. & N. R. R.*, 97 Miss. 50; *Shields* v. *Ohio*, 95 U. S. 319, 24 L. Ed.—.

Primarily, under the corporate laws of the state of Mississippi, there is no power to increase or diminish the capital stock. When a corporation with a capital stock of thirty-five thousand dollars was created, there were created legal relations between (1) the state and the corporation; (2) between the corporation and its shareholders, and (3) between the shareholders *inter se.*

There were three several separate contracts that were entered into when this organization was perfected. First, the contract evidenced by the charter between the state and the corporation; second, the contract between the corporation and its stockholders; third, the contract between the shareholders. *Sommerville* v. *St. Louis*, 127 Pac.—; *Avondanle* v. *Shook*, 170 Ala. 383; Cook on Corporations (6 Ed.), 492; *Gary* v. *Mining Co.*, 32 Utah, 505; 75th, Ruling Case Law, 172; *Marion Trust Co.* v. *Bennett*, 169 Ind. 350; *Chicago, etc., R. Co.* v. *Allerton* (1873), 18 Wall. 233, 21 L. Ed. 902; *McNulta* v. *Corn Belt Bank*, (1897), 164 Ill. 427, 45 N. E. 954, 56 Am. St. Rep. 203; *Note to Peck* v. *Elliott* (1897), 38 L. R. A. 616; Clark, Priv. Corp. (Tiffany's Ed.), p. 346; *Peck* v. *Elliott*, 36 L. R. A. 616; *Ross-Mehan Shoe Foundry Co.* v. *Southern Malleable Iron Co.*, 72 Fed.

957; *Granger's Life & Health Ins. Co.* v. *Kamper,* 73 Ala.. 325; *Einstein* v. *Rochester, Gas & E. Co.,* 146 N. Y. 46; *Chicago, etc., R. Co.* v. *Allerton,* 85 U. S. 18 Wall. 236, 21 L. Ed. 903; 2 Thompson, Corp., secs. 2076, 2079; Morawetz, Priv. Corp., sec. 434; Beach, Priv. Corp., sec. 468.

To decrease the capital of such a company would be in most cases to withdraw capital pledged to the fortunes of the adventure. These reasons have led the courts with great unanimity to hold that the power of increasing the capital does not involve or imply the power to decrease. *Sutherland* v. *Olcott,* 95 N. Y. 94; *Moses* v. *Ocoll Bank,* 1 Lea, 388, 408; *Droitwich Patent Salt Co.* v. *Curson,* L. R. S. Exch. sec. 770; *Smith* v. *Goldsworthy,* 4 Q. B. 431; Cook, Stock & Stockholders, sec. 281; Morawetz, Priv. Corp., sec. 434; *Sutherland* v. *Olcott,* 95 N. Y. 100; *Droitwich Patent Salt Co.* v. *Curzon, & R., Exch.* 42; *In Re Financial Corp., L. R.* 2 Ch. App. Cas. 714; *Smith* v. *Goldsworthy,* 4 Q. M. 430; Morawetz on Corp., sec. 230; Morawetz on Priv. Corp., p. 408, section 434; *Atlanta Steel Co.* v. *Mynahan,* 75 S. E. 980; *Macon* v. *Richter,* 143 Ga. 400; Morawetz on Private Corporations (2 Ed.), section 4023; Taylor on Private Corporations, section 133; *Scoville* v. *Thayer,* 105 U. S. 148, 26 Am. & Eng. Ency. Law (2 Ed.), 849; Taylor on Private Corporations (4 Ed.), section 51; *Southern Securities Co.* v. *State,* 91 Miss. 195.

Our code gives a right to surrender a charter and wind up the corporate affairs, but it does not, at any point confer upon the majority shareholders, the absolute right to control the amount of capital stock and to alter the same at their whim or pleasure. *Harris* v. *Railroad Company,* 27 Miss. 531; *Hester* v. *Memphis, etc., R. R. Co.,* 32 Miss.—; *Ellison* v. *Railroad Company* 36 Miss. (1858), 1489; *Champion* v. *Railroad Company,* 35 Miss. 694; *Pratt* v. *Cotton Co.,* 51 Miss. 474; *Bank* v. *Pinson,* 58 Miss. 437; *State* v. *Bancroft,* 134 N. W. 335; Section 1, article 1; *Janesville* v. *Carpenter,* 77 Wis.

288, 46 N. W. 128, 8 L. R. A. 808; 20 Am. St. Rep. 123; *State ex rel. Kellogg* v. *Currens, et al.,* 111 Wis. 431, 435, 87 N. W. 561, 56 L. R. A. 252; *Adirondack* v. *New York,* 176 U. S. 335, 200 Sup. Ct. 460; 44 L. Ed. 492; *People ex rel. Schurz* v. *Cook,* 148 U. S. 387, 13 Sup. Ct. 645, 37 L. Ed. 498; *Pearsall* v. *Great Northern Ry. Co.,* 161 U. S. 646, 16 Sup. Ct. 705; 40 L. Ed. 833; *Bank* v. *Tennessee,* 163 U. S. 416, 16 Sup. Ct. 1113, 41 L. Ed. 211; *Shields* v. *Ohio,* 95 Tenn. 319, 24 L. Ed. 357; *Greenwood* v. *Freight Co.,* 104 U. S. 13, 26 L. Ed. 961; *Wilmington Ry. Co.* v. *Wilmington, etc.,* 8 Del. Ch. 468, 46 Atl. 12; *Avondale* v. *Shook,* 170 Ala. 383.

Since the decision of the case of *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat 518, 4 L. Ed. 629, it has been fully recognized in this country that the charter of a private corporation is a contract within the meaning of and under the protection of that clause in the Constitution of the United States which provides that: "No state shall pass any law impairing the obligations of contracts" (section 10, article 1, Constitution U. S.), but the charter of a corporation having a capital stock is a contract between three parties and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; and, it is a contract between the corporation and the stockholders; third, it is a contract between the stockholders and the state. Cook on Corporations (6 Ed.), 492. The charter is under the protection of said clause of the federal Constitution in all three of its aspects as a contract. *Gary* v. *Mining Co.,* 32 Utah 505; 2 Cook on Corp. (5 Ed.), sec. 492; 1 Clark & Mar., Priv. Corp., sec. 271-f; 3 Clark & Mar., Priv. Corp., sec. 631-f; *Dartmouth College* v. *Woodward,* 4 Wheat (U. S.), 518, 4. L. Ed. 629; 1 Rose's Notes on United States Reports, p. 942; *In Re Newark Library Ass'n,* 64 N. J. Law, 217, 43 Atl. 435; *Pronick* v. *Spirits Distributing Co.,* 58 N. J. Eq.

97, 42 Atl. 586; *Intiso v. Loan Association,* 68 N. J. Law, 588, 53 Atl. 206; *Zabriskie v. Hackensack & N. Y. R. R. Co.,* 18 N. J. Eq. 178, 90 Am. Dec. 617; *Snook v. Georgia Improvement Co.,* 83 Ga. 61, 9 S. E. 1104; *Grangers Life & Health Co. v. Kamper,* 73 Ala. 341.

That corporations have not an implied power to effect such changes, that it can be effected only by legislative sanction, seems to be settled. Green's Brice's Ultra Vires, 112; Thompson on Liability of Stockholders, sec. 115; *Lathrop v. Kneeland,* 46 Barb. 432; *Mutual Life etc., Ins. Co. v. McElway,* 112 N. J. Eq. (1 Beasley) 133; *New York & N. J. R. R. Co. v. Schuler,* 34 N. Y. 30; *Railway Company v. Allerton,* 18 Wall. 233; *Scoville v. Thayer,* 105 U. S. 143; *Bryan v. Aiken,* 82 Atl. 817; *Bitler v. Cooper Co.,* 93 Atl. 381.

These decisions demonstrate the points for which we contend: (1) There is a contract between the shareholders whose fundamental terms are fixed by the charter; (2) That these terms so thus fixed are a contract; (3) That the amount of the capital stock is a term of the contract, and any change therein is fundamental; (4) That such fundamental change can be made by the majority only when it is assented to by all parties.

It appearing affirmatively in the instance case, that not only was there no assent given by all parties, but on the contrary, a very active and persistent dissent, we submit, with the utmost confidence, that it does not lay within the power of this majority to thus take from us our property, to compel us to make a contract which we did not want to make, and to come into an organization in which we did not desire to enter. The right of appellant so to do is sustained by the unanimous authorities; and we therefore respectfully submit that the cause should be reversed and the bill dismissed.

*McLean & Carothers,* for appellee.

Counsel state that in effecting the amendment in this case no action was taken by the state to this end, and argue that the right to amend is "limited and circumscribed, and can be exercised (1) only by the legislature; (2) when the public interest demands it, and not for the benefit of private gain; and (3) upon the express conditions that no injustice shall be done the shareholders."

"Counsel utterly ignore section 899, Code 1906, and fail to correctly set forth the record. In the case at bar application was duly made to the state for authority to make the amendment, all requirements of law were strictly complied with, and the reduction was authorized by the state. If it be true, as contended by appellant, that only the legislature has the authority in itself to alter, change, or amend charters, then every time a corporation sought to amend its charter a special session of the legislature would have to be called for the purpose, or else these amendments could be made only once in every two years at the regular sessions of the legislature, and the wheels of business progress would thereby be blocked. And then, too, the constitution provides that corporations are to be created under general laws, certainly they may be amended under general laws. If counsel's position be sound, then we should have the strange situation of the legislature dealing with corporations by special laws, the very thing the Constitution has prohibited. It is true that section 178 of the Constitution provides that the legislature may alter, amend, and change charters, and it was in accordance with said section 178 and section 888 of the Constitution of the state that chapter 24 of the Code of 1906, was adopted; and by section 899 of said Code, power was given and delegated to the governor by the legislature to grant, with the advice of the attorney-general, amendments to char-

ters of corporations—except in the cases of railroads other that street railroads and insurance companies.''

In *Yazoo City v. Lightcap*, 82 Miss. 74, in discussing the question of charters and amendments thereto, the court said: ''There was a uniformity intended to be secured, but that was uniformity only as to the general mode of granting and amending charters. It · was thought far more convenient, as ridding the legislature of useless special applications, for such charters and their amendments, and as securing for the public service for more important legislation, the time that had theretofore been uselessly consumed in the consideration of such special legislation, to direct that thereafter—that is to say, after the adoption of said section—the legislature should provide a general· law, prescribing a uniform mode, in conformity with which municipal charters should be granted and amended. That the legislature . has done.'' And· again, on page 177: ''It was provided in the Code of 1857 (ch. 35, art. 1, secs. 1-3), how corporations might be created, etc. This has been the law practically ever since, and the only change, a very great and useful change· it is true, accomplished by section 88 of the Constitution is in providing that the legislature should be freed from the nuisance of having to deal separately with each and every charter and its amendments; referring the granting and amending of such charters, as to the mode of granting them and the mode of amending them, to the operation of the general law.''

Under the new state banking law the manner of renewal and amendment of charters remains the same, for section 32 of said law (chap. 124, Laws of 1914), provides: ''Any bank desiring to renew or amend its charter may do so in the manner provided· by law for the amendment of charters,'' etc. ·

To comment on all the authorities cited by appellant would unduly prolong this · brief, and if the court will examine these authorities, we submit that it will be

seen that they are not in conflict with the position we take. The rule invoked by counsel for appellant is the ancient law as announced in the *Dartmouth College case,* and a great many of the cases cited by them embody excerpts from the opinion in that case. Appellant loses sight entirely of the power reserved by the state to alter, amend, and change charters of corporations, and "the historical origin of this reservation of the right to amend was due to the effort of the various states to escape from the decision in the Dartmouth College case." 2 Cook on Corps., sec. 501, citing *Springs Valley Waterworks* v. *Schottler,* 110 U. S. 347-352.

Counsel for appellant at pages 5-6-7-8-9-10-11 of their brief cite cases in which it is said that corporations have no implied power to change their capital stock, but there is not a single case cited which says that a corporation has no right to make a change in its capital, where the state reserves the right to alter and amend charters, and especially so where the charter itself provides that the charter may be amended.

Appellant quotes at length from 7 Ruling Case Law, sec. 172, we fail to see where appellant derives any comfort for his position from this citation, which is as follows: "But the rule against an implied power of a corporation to increase the amount of its capital when that is definitely fixed by the charter or stationary articles of incorporation, has no application where the power to determine upon the capital to be engaged is made one of the modes for internal regulation by by-laws."

Furthermore, section 174 of 7 Ruling Case Laws is as follows: "The right to increase the capital stock of a corporation is intended for the benefit of the joint owners, and can be exercised only by the corporation itself. An increase or reduction of the capital stock of a corporation is a fundamental change in its affairs, and must be authorized by a majority of the stockholders at a corporate meeting, and in the manner pre-

scribed by law. Where the charter provides that the capital stock may be increased at the pleasure of the company, it is a privilege not included in the powers and duties of the directors of the corporation, and may not be exercised by the directors alone as the ordinary business transactions of the company unless expressly authorized thereto but must be authorized by the shareholders at a corporate meeting. Citing *McNulta* v. *Corn Belt Bank,* 56 A. S. R. 203.

Appellant next quotes from *Marion Trust Co.* v. *Bennett,* 169 Ind. 350, as follows: "A change in the amount of the capital stock of a corporation, like a change in the objects thereof, is fundamental, and cannot be made without clear legislative authority." In support of this doctrine is cited *Chicago, etc., R. Co.* v. *Allerton,* 18 Wall. 233, and *McNulta* v. *Corn Belt Bank,* 164 Ill. 427, 56 Am. St. Rep. 203.

Now, let's see what this language really means and what the cases cited in support of the doctrine really hold. The case of *Chicago, etc., R. Co.* v. *Allerton,* was where the board of directors of a corporation attempted to increase the capital stock without authority so to do, and the court merely held that the change in the capital stock was of such a nature that the directors alone, and without the matter being submitted to and approved by the stockholders, have no power to increase it unless expressly authorized thereto. The court said at page 236: "If the charter provides that the capital stock may be increased, or that a new business may be adopted by the corporation, this is undoubtedly an authority for the corporation (that is the stockholders) to make such a change by a stockholders' vote, in the regular way."

The case of *McNulta* v. *Corn Belt Bank, supra,* was another case where it was said that an increase of capital stock was a change of such a nature that it could not be made by the board of directors alone, but must be authorized by a majority of the stockholders, at a

corporate meeting, and this case holds at page 209: "The policy of a corporation is always under the control of a majority of its stockholders, and the lawful exercise of its franchise and business must be regulated and governed by a majority of its stockholders." Citing *Wheeler* v. *Pullman Iron etc., Co.,* 143 Ill. 197.

The case of *Peck* v. *Elliott,* 36 L. R. A. 616, next cited by appellant, is really an authority for appellee when rightly considered and understood. The part of the opinion which appellant' quotes is that a corporation has no power to increase or diminish its capital stock unless expressly authorized so to do. In the instant case the power was reserved both by the state and the charter of the corporation.

It is a well-settled rule of law that changes or alterations of charters of corporations, which are auxiliary or incidental, may become ingrafted upon the charter by the acceptance of a majority. This doctrine, which is a universal one, is set forth very clearly in the well-considered case of *Perkins* v. *Coffin,* Ann. Cases, 1912C, page 1193, 84 Conn. 275; *New Haven, etc., R. Co.* v. *Chapman,* 38 Conn. 56, 71; *Joy* v. *Jackson, etc., Plank Road Co.,* 11 Mich. 155, 171; Clark and Marshall on Corporations, p. 171, sec. 57e; *Mower* v. *Staples,* 32 Minn. 284, 286, 20 N. W. 225; *Wright* v. *Minn. Mut. L. Ins. Co.,* 193 U. S. 657, 664, 24 Sup. Ct. 549, 48 U. S. (Law Ed.) 832; 3 Clark & Marshall on Corps., page 1904.

"It is generally agreed that amendments to a charter which are not radical or fundamental, but are merely auxiliary to the purpose of the corporation, may be accepted by a majority of the stockholders with the effect of binding all the stockholders, whether assenting or not." A. & E. Enc. Law (2 Ed.), page 680, and authorities cited in note 4; *Zabriskie* v. *Hackensack, etc., R. Co.,* 18 N. J. (Eq.) 185, 90 Am. Dec. 617; *Wright*

v. *Minn. Mut. Life Ins. Co.*, 193 U. S. 657; 2 Cook on Corps., sec. 499.

"Whether an amendment materially changes the corporate plans or not is a question of law for the court. Accordingly each case is to be decided according to the peculiar circumstances of that case, and no general rules can be laid down which will apply to all cases. Many illustrations are given in the notes below" (Note 6). "Reduction of capital stock and shortening of the road." *Troy, etc., R. Co.* v. *Kerr,* 17 Barb. 581; *Jesslyn* v. *Pacific Mail S. S. Co.*, 12 Abb. Pr. (N. S.) 329. Enlarging the capital stock and extending the road, such changes not appearing on the record to be detrimental. *Peoria, etc., R. Co.* v. *Elting,* 17 Ill. 429; *Rice* v. *Rock Island, etc., R. R. Co.*, 21 Ill. 93, an amendment increasing the capital stock and authorizing a branch road does not release subscribers. *Schenectady, etc., R. Co.* v. *Thatcher,* 11 N. Y. 102. All of these amendments were held to be of such a nature as not to radically change the charter of the corporation.

We submit that in the instant case the reduction of the capital stock was in no sense a fundamental or radical change, but it was an alteration made in furtherance of the purpose for which the corporation was organized. 7 Thompson, Corp., sec. 8694; *Theis* v. *Dun,* 110 Am. St. Rep. 880, 125 Wis. 651, 104 N. W. 985.

The case at bar presents not an instance of where the majority stockholders are trying to gain any unfair advantage. The only advantage being such as accrues to the corporation and each and every individual stockholder thereof. But rather it is a striking illustration of where one, lone, recalcitrant stockholder seeks to make the majority bow to his will, and would rather see the success of an institution, the interests of which he should have at heart,—jeopardized, than to fail to have his own way, and to carry his point.

The laws of this state with reference to corporations, and amendments of the charters thereof, which were in effect when charter in the instant case was granted, and which are still in force and effect in this state, became as much a part of the charter and as much a part of the contract entered into between the corporation and the state, and the corporation and its shareholders, as if expressly and actually written into the charter. "It is a principle of law that a corporation created under the general laws takes its authority from such general laws, and not from the articles of association (*People v. Chicago Gas Trust Co.*, 130 Ill. 268) and a corporation created under chapter 25, Annotated Code of 1892, can only exercise the powers prescribed by that chapter. *Woodberry v. McClurg*, 78 Miss. 836; *Nugent v. Board of Supervisors*, 19 Wallace, 250, 251.

We have shown above that a majority of the stockholders can bind the minority on all alterations of an auxiliary nature, and those which do not change the object and purpose for which the corporation was organized, and that the amendment of the charter in the instant case was an auxiliary one; but we have gone further than that, and have shown from the language of the supreme court of the United States that even granting for the sake of argument that the alteration is fundamental, yet if such alteration is contemplated by either the charter or the general laws of the state, the dissenting, minority stockholders is bound, if such alteration be made. 2 Thompson in his work on Corps., sec. 2088; *Port Edwards, etc, R. Co. v. Arpin*, 80 Wis. 214; *C. H. Venner Co. v. U. S. Steel Corp. et al.*, 116 Fed. 1013; *McKee v. Chautauqua Assembly et. al.*, (Circuit Court of Appeals, Second Circuit, decided April 20, 1914) 130 Fed. 539.

The law is plain that "the by-laws of a corporation when duly enacted are written into the charter and are a part of the fundamental laws of the corporation, bind-

116 Miss.—54.

ing not only on the corporators and the corporation, but on those dealing with it." *Commonwealth* v. *Vandegrift,* Ann. Cases, 1912 C. 1269, 232 Pa. St. 53, 81 Atl. 153. The by-law, with reference to amendments in the case at bar, was adopted at the time the charter was accepted; and provides that the charter may be amended in any particular by a majority of the stockholders. 2 Morawetz on Corps. (2 Ed.), sec. 1111; *McNulta* v. *Corn Belt Bank,* 56 Am. St. Rep. 209; *Hinds County* v. *Natchez, J. & C. R. Co.,* 38 So. 191, and 192, 85 Miss.—

Under our state banking law a banking corporation may go into liquidation on a vote of two-thirds of its stockholders, and certainly, if two-thirds of the stockholders can absolutely liquidate the corporation and cause it to go out of business, it should be in the power of a majority of the stockholders to make a change in the capital stock of the corporation for the purpose of continuing the business to the best advantage.

The state has control of banks under the police power lodged in the state, as was held in *Bank of Oxford* v. *Love,* 72 So.—, and it has the undoubted right to regulate banks. This is also the rule of the United States supreme court, as is held in the cases from that court cited in the opinion in the case of *Bank of Oxford* v. *Love, supra.* The bank of Oxford case holds unqualifiedly that the state banking law of 1914, is constitutional.

Now, granting for the sake of the argument that appellant's position is sound, and that the amount of the capital stock as fixed by the charter cannot be changed, then he has no case, according to his own argument. The capital stock of the appellee was originally twenty-five thousand dollars—this was the amount named in the charter. Thereafter, it was increased to thirty-five thousand dollars but according to appellant's argument that increase was illegal, as the very same steps were taken to increase the amount of the capital stock as were taken in the reduction of the same, and if the decrease is invalid, it necessarily follows that the

increase was likewise invalid; therefore, the capital today is what it has always been (if appellant's argument holds water at all) to-wit, twenty-five thousand dollars, the amount named in the charter.

We confidently submit that the cause should be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court overruling the demurrer to the complainant's bill, and presents for our consideration one proposition of law which is, to state it in the simplest language: Can an organized state bank with an authorized capital stock of thirty-five thousand dollars reduce its capital stock by charter amendment to twenty-five thousand dollars, by a majority vote of the stockholders, it having adopted a by-law by the stockholders at the time its charter was accepted providing expressly that any and all amendments to the charter might be made whenever a majority of the stockholders may so declare to have the charter amended in any particular? The contention of appellant is that no such amendment to a charter reducing the amount of the capital stock can be validly made except by unanimous vote of all the stockholders of the corporation; and that the right to amend is limited and circumscribed, and can be exercised only by the legislature, when the public interest demands it and not for the benefit of private gain, and upon the express condition that no injustice shall be done the shareholders.

The charter of the appellee bank and amendment thereto provided that the capital stock of the bank should be thirty-five thousand dollars. At the time the charter was accepted and the bank organized, the following by-law was duly and regularly adopted by the stockholders under authority of section 901, Code 1906 (section 4073, Hemingway's Code):

"An increase in the capital stock of the bank may be made whenever a majority of the stockholders may so declare, and any and all amendments to the charter may be made whenever a majority of the stockholders may so declare, and thereupon permission to the state may be applied for, to increase the capital stock, or to have the charter amended in any particular."

Section 899, Code 1906 (section 4071, Hemingway's Code), in force now and at the time the charter was granted, provides as follows:

"Renewals and Amendments.—Every corporation created under the provisions of this chapter, and every corporation heretofore created, whether by special act of the legislature or under the general law, 'except railroads other than street railroads and insurance companies,' desiring a renewal or amendment of its charter, shall make publication as above, if the original charter were required to be published, setting forth at length in such publication, the nature and extent of the amendment or amendments desired, and the Governor, with the advice of the attorney-general, may grant the same. But in case of renewal merely it shall be sufficient for the Governor to give a certificate that the original charter is renewed, under the great seal of the state."

See, also, Acts 1914, page 123, section 32.

Section 88 of our Constitution reads: "The legislature shall pass general laws, under which local and private interests shall be provided for and protected, and under which cities and towns may be chartered, and their charters amended, and under which corporations may be created, organized, and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment."

After the resolution was passed and adopted by a majority of the stockholders of the bank, which resolution is here quoted:

"Resolved by the stockholders of the Bank of Commerce, of Grenada, Miss., that the present capital

stock be reduced from thirty-five thousand dollars to twenty-five thousand dollars; that application be made to the state of Mississippi, so as to authorize this decrease in capital after compliance with the laws of said state; and, further, that when said capital is reduced that the certificates of stock now outstanding be called in and new certificates be issued in lieu of said old certificates in proportion to the amount of stock now held by each stockholder—the new certificates to be issued upon the said reduced capital—which said resolution after being discussed was unanimously adopted by all of the stockholders''—the amendment to the charter authorizing the reduction of the capital stock to twenty-five thousand dollars was duly published as required by section 899, Code 1906 (section 4071, Hemingway's Code), and was granted by the Governor with the advice of the attorney-general—all of which was regular and in accordance with the statute.

We are unable to see any merit in the contention of the appellant that the amendment to the charter of appellee was not in all respects legal and valid. The question is presented as to whether this change in the amount of the capital stock from thirty-five thousand dollars to twenty-five thousand dollars is a radical or fundamental change in the purpose and character of the original charter necessitating a unanimous vote of the stockholders to make such change, or whether such change in the capital stock was merely auxiliary or incidental to the original purpose or plans of the corporation and might be made by a majority of the stockholders. But we consider it unnecessary to pass upon this question, although we think the better rule is that such a reasonable change in the amount of the capital stock is not a fundamental or radical change, but is auxiliary and incidental to the main purpose of the corporation. However, under either view it appears certain to us that under the Constitution and statutes of our state the amendment to the charter here in question was contemplated

and permissible, and was authorized by a resolution passed by a majority of the stockholders of the bank under the statute (section 899, Code 1906; section 4071, Hemingway's Code), which permits such amendments, and more especially was it proper since, under section 901, Code 1906, a by-law was duly passed and in force authorizing any and all amendments to the charter by a majority of stockholders at the time the appellant, who seems to be the only objecting stockholder, became or was a stockholder in the bank (*Commonwealth* v. *Vandegrift*, 232 Pa, 53, 81 Atl. 153, 36 L. R. A. [N. S.] 45 Ann. Cas. 1912C, 1269).

In other words, under Constitution, section 88, the right is given to the legislature to create corporations and amend or change charters of corporations, and where the charter of the corporation itself provides that it may be amended, as it does here by reading into it section 899, Code 1906, and the corporation so provides by its by-laws, and where the majority of the stockholders pass a resolution for the amendment, properly petition for the same under the law, and the amendment is granted as authorized by the statute, such amendment is legal and valid. 7 R. C. L. section 174.

"An amendment may be said to be auxiliary and incidental when it merely grants new powers or authorizes new methods and new plans for the purpose of carrying out the original plan and effecting the real object of that plan." 2 Cook on Corporations (6 Ed.), section 499.

"Amendments, which do not change the nature, purpose, or character of a corporation or its enterprise, but which are designed to enable the corporation to conduct its authorized business with greater facility, more beneficially, or more wisely, are auxiliary to the original object." *Mower* v. *Staples*, 32 Minn. 284, 20 N. W. 225.

"Where there is an exercise of the power in good faith, which does not change the essential character of the business, but authorizes its extension upon a modi-

fied plan, both reason and authority support the corporation in the exercise of the right." *Wright* v. *Minn. Mut. L. Ins. Co.,* 193 U. S. 657, 664, 24 Sup. Ct. 549, 551 (48 L. Ed. 832).

Under the authority of our Constitution, section 88, the legislature has provided a simple way of obtaining a corporate charter and amendments thereto; and when it appears necessary or beneficial to the interests of the corporation that its capital stock be increased or decreased, the method provided by the legislature for so doing is plain and constitutional; and when the requirements of the statute have been met by a majority of the stockholders of the corporation and the amendment has been granted by the officials named by the legislature for that purpose, the amendment is valid. This method of obtaining charters and amendments to them was wisely substituted by the legislature for the old, tedious, and expensive method of securing corporate charters directly from the legislature, and we see no constitutional objection to it.

If the contention of appellant were held to be sound, we would have the absurd situation in this case of one stockholder preventing the corporation from changing the amount of its capital stock, by either decreasing it or increasing it, which change might be absolutely necessary to the best interests of the bank or even necessary to its very existence, since, under our banking law of 1914, it may be that the affairs of the bank were in such a condition that the state bank examiner should demand that the capital stock be decreased and the ten thousand dollars be written off the books of the bank so as to put the institution on a sound banking basis as required by the banking laws of our state. Then to say, as contended by appellant, in view of our statutes with reference to charters of corporations and the amendments thereto, and the banking laws of our state, that one single minority stockholder can prevent

the change in the capital stock when all of the other stockholders desire the change, and it was necessary to the existence of the institution that the change be made, would be to give the dangerous power to one stockholder to force the bank into liquidation, resulting in loss to the other stockholders, contrary to the policy of our banking law, and against the best interests of all concerned. But minority stockholders have no power under the laws of this state to prevent a reasonable change in the amount of the capital stock, as in this case, regardless of whether such change be radical or fundamental or whether it be merely auxiliary and incidental to the original purposes of the corporation.

"When a corporation is authorized by its charter to increase its capital stock, the power to increase becomes, so to speak, a part of the contract of subscription, and its exercise will be binding upon the stockholder, whether or not he assents thereto. The common-law rule that any material alteration in the charter of the corporation, without the consent of a stockholder, relieves him from liability on his stock subscription, does not apply to such a case." Thompson on Corporations, vol. 2, section 2088; *Port Edwards R. Co.* v. *Arpin,* 80 Wis. 214, 49 N. W. 828.

As we have said above, the appellee corporation here was authorized by its charter, and the statutes written into it, to make amendments to its charter, and thus increase or decrease its capital stock. When we say that the charter of the appellee bank authorized its amendment, we mean that the charter, with our statutes (section 899 and 901, Code 1906), together with the by-law passed at the time the charter was accepted, referred to above, authorized such amendments of the charter, and when the appellant subscribed for the stock, he then and there became bound under the charter and its amendments to be governed by the will of a majority of the stockholders of the corporation whether he agrees

or objects to the amendment increasing or decreasing the amount of the capital stock.

In answer to the last contention of the appellant, which question does not really arise here, that no amendment of the charter can be made if it shall do an injustice to the shareholders, we say in this case that it certainly appears that no injustice has been done to the appellant by amending the charter of the appellee bank reducing the amount of the capital stock from thirty-five thousand dollars to twenty-five thousand dollars, as the appellant is offered new stock under the amended charter which is of the same actual value, though a less number of shares, as the stock held by him in the bank before its capital stock was reduced by the amendment.

Appellant cites and relies upon the case of *Scoville* v. *Thayer,* 105 U. S. 143, 26 L. Ed. 968, as an authority to sustain his position, but the case is not in point for the reason that in the case cited by counsel the facts are different and the law of the state of Kansas was quite unlike the law of Mississippi. Under the laws of Kansas a corporation was prohibited from increasing its capital stock to an amount exceeding double its original capital stock authorized in its charter. In that case the corporation attempted to increase its capital stock from one hundred thousand dollars to four hundred thousand dollars, which was violative of the law of that state and was void, but it was held in that case that an increase from one hundred thousand dollars to two hundred thousand dollars was valid. The difference in the Kansas case and the case before us is very obvious.

The judgment of the lower court is affirmed, and case remanded, with leave to answer within sixty days after the mandate reaches the lower court.

*Affirmed.*